# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| DANIELLE RUSSELL, | |
| Plaintiff | |
| v. | Civil Case. No. _____ |
| RIVER VALLEY COMMUNITY COLLEGE, | **JURY TRIAL DEMANDED** |
| Defendant | |

## COMPLAINT

### INTRODUCTION

1. This action seeks to recover lost tuition and other school-related costs for Plaintiff Danielle Russell ("Russell") from Defendant River Valley Community College ("RVCC").

2. Russell sues for damages for violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and for breach of contract.

### PARTIES

3. Plaintiff Danielle Russell ("Russell") is an individual who resides at 137 Pingree Road, New London, New Hampshire 03257.

4. Defendant River Valley Community College ("RVCC") is a public, non-profit organization accredited by the New England Commission of Higher Education, primarily located at 1 College Place, Claremont, New Hampshire 03743. RVCC is part of the Community College system of New Hampshire and is considered a state entity.

5. Russell specifically attended RVCC – Lebanon located at 15 Hanover Street, Lebanon, New Hampshire 03766.

## JURISDICTION & VENUE

6. The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because Russell alleges violations of Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA").

7. The Court has supplemental jurisdiction over the state-law breach of contract claims pursuant to 28 U.S.C. § 1367.

8. Venue in the District of New Hampshire is proper based on 28 U.S.C. § 1391(b)(1) because RVCC is a New Hampshire entity.

## FACTS

### Plaintiff's Injury and Removal from Nursing Program

9. Russell is currently employed as a Licensed Nursing Assistant ("LNA") at Alice Peck Day Memorial Hospital ("APD"). She began that role on November 29, 2021.

10. On October 15, 2021, Russell was accepted into the Licensed Practical Nursing Program at RVCC – Lebanon for the Spring 2022 semester.

11. In January 2022, Russell began her studies at RVCC to become a Licensed Practical Nurse ("LPN").

12. As part of her program at RVCC, Russell did her clinical hours at APD.

13. On February 24, 2022, while she was working as an LNA for APD, Russell injured her elbow catching a patient who started to fall in the bathroom. She immediately informed the charge nurse that day, Ann Marie Palmieri ("Palmieri").

14. Palmieri is also an instructor at RVCC and she runs the clinical program at APD.

15. On February 28, 2022, after four days of elbow pain, Russell first reported the pain to a doctor. Because she already had a later appointment scheduled with an orthopedist, she chose to treat the pain symptoms until that time.

16. Russell did not report the specific cause of the pain to the doctor because she did not want to be removed from the clinical program.

17. On March 3, 2022, Russell went to see the orthopedist, Dr. Daniel Austin ("Dr. Austin"), in Orthopedics at New London Hospital, who diagnosed her with lateral epicondylitis in her left arm.

18. Dr. Austin recommended that Russell take at least a month off from work if light duty was not possible. Dr. Austin also recommended conservative, non-operative measures of treatment because the injury usually resolves itself without surgery.

19. That same day, on March 3, 2022, Russell emailed both Eileen Glover ("Glover"), the LPN program director, and Palmieri to inform them that she had injured her left elbow and that she could not lift anything or otherwise use her left arm until April 3, 2022, but that she could still attend her clinicals. She attached a letter from Dr. Austin.

20. On March 7, 2022, Russell called to ask Dr. Austin to draft a more detailed reasonable accommodation letter for her clinical program. He did so, stating that Russell "may return to APD as a student for her nursing program" with the restriction that she "will only be allowed to use her right arm/hand."

21. That same day, March 7, 2022, Russell followed up with Glover and Palmieri to provide them with Dr. Austin's more detailed letter, which explicitly stated that she could attend clinicals.

22. Later that afternoon, Glover acknowledged receipt and responded via email that "Professor Palmieri will work with you to come up with a plan."

23. From March 7 until April 5, 2022, Palmieri accommodated Russell's needs and allowed her to attend and participate in clinical instruction at APD.

24. On March 31, 2022, Russell returned to see Dr. Austin at his office in New London. She informed him that she wanted to be evaluated to return to work because she felt pressured to do so.

25. On April 4, 2022, Dr. Austin drafted a letter updating his recommended accommodation to allow Russell to return to work on light duty with restrictions including no strenuous movement with or use of left upper extremity, such as lifting, reaching, pushing, pulling, and carrying. The updated work accommodation did not alter Dr. Austin's recommendation with regard to clinical instruction at Russell's nursing program.

26. Russell sent the updated accommodation request to both Glover and Palmieri on the same day.

27. The next day, on April 5, 2022, Glover responded to the updated accommodation with an email stating "it is clear that you are physically unable to meet the physical requirements of the LPN nursing program." Glover also cited the Technical Standards for Nursing Students on page 21 of the RVCC Nursing Programs Handbook but did not identify any of the specific standards Russell was unable to meet with the requested reasonable accommodation.

28. Glover's April 5 email was the only correspondence on the subject after RVCC received the updated accommodation request. RVCC did not engage in the interactive process.

29. On April 6, 2022, Russell responded with a letter to Jennifer Cournoyer, Vice President for Academic and Student Affairs at RVCC, explaining that she had been terminated

due to her disability and seeking reimbursement for the costs of the semester for which she would no longer receive credit.

30. On April 19, 2022, RVCC responded that Russell did not request a reasonable accommodation or identify herself as a qualified individual with a disability, despite the school's knowledge of her injury and doctor-ordered accommodation.

31. RVCC also stated in the letter that Russell would have to file an internal tuition appeal to receive a refund.

32. Since then, Russell was given a Zero for the assignments she did not complete after she was removed from the program, resulting in an F in her clinical course, LPN Nursing Care I, and a D in Professional Concepts in Nursing. Before she was given Zeros for the assignments handed out after her termination from the program, Russell's grades consisted solely of B+s and As.

33. On May 2, 2022, after she was terminated from the LPN program at RVCC, Russell applied to the Accelerated Bachelor of Science in Nursing Program at Duke University in Durham, North Carolina ("Duke"). Russell needs to supplement her application with her grades before the school makes an admittance decision in June or July.

34. Russell understandably does not want to send to Duke these poor grades, which are a result solely of RVCC terminating her from the program. Accordingly, counsel for Russell drafted a Motion for Preliminary Injunction, seeking injunctive relief to either force RVCC to remove record of Russell's attendance in the LPN program for Spring 2022 or, alternatively, to assign grades of Incomplete for the two courses.

35. In accordance with Local Rule 7.1(c), undersigned counsel reached out to counsel for RVCC to seek assent for the Motion. RVCC's counsel discussed the option of removing

record of Russell's Spring 2022 semester, but it found it could not. Ultimately, RVCC's counsel offered that it could mark the courses as Withdrawn *if* Russell request to withdraw. Russell does not seek to withdraw from these courses nor have them marked as withdrawn because that does not reflect the reality of her having been removed from the program involuntarily for medical reasons.

36. Now, undersigned counsel is attempting to negotiate receipt of a formal transcript for one pre-LPN course that Russell took at RVCC without inclusion of the Spring 2022 semester. If those negotiations prove unsuccessful, counsel will file the drafted Motion for Preliminary Injunction.

Relevant Contractual Provisions

37. RVCC's Student Handbook for 2021-2022 (the "Handbook") states that "the College is committed to providing a variety of educational approaches, instructional methods, supplementary services, and co-curricular activities to meet [its students'] diverse needs." *See* Handbook, at 1 (attached as Exhibit A).

38. The Handbook also contains a Non-Discrimination Policy that explicitly states that RVCC does not discriminate on the basis of disability and that it is in compliance with the ADA. Ex. A, at 2.

39. The Handbook also contains a Medical Leave Policy which allows a matriculated student to take medical leave if he or she "becomes unable to complete his/her academic requirements and/or who becomes unable to meet the program's technical standards and/or the requirements of the Student Code of Conduct" to apply for a formal Medical Leave of Absence." Ex. A, at 25-26.

40. In Russell's case, RVCC decided on its own that Russell could no longer meet the program's technical standards and removed her from the program without providing her the option to take formal Medical Leave.

41. RVCC's Handbook also states that it provides reasonable accommodations to students with disabilities to "allow them to achieve at a level limited only by their abilities and not their disabilities." Ex. A, at 28.

## COUNT I
## Title II of the Americans with Disabilities Act

42. Russell re-alleges and incorporates by reference all paragraphs as if fully restated herein.

43. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

44. The term "public entity" includes any "instrumentality of a State", like RVCC, a community college in the New Hampshire public community college system. 42 U.S.C. § 12131(1)(B).

45. A "qualified individual with a disability" means "an individual with a disability who, with or without reasonable modification to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by the public entity." 42 U.S.C. § 12131(2).

46. Disability, with a respect to an individual is defined as: "(i) A physical or mental impairment that substantially limits one or more major life activities of such individual; (ii) A

7

record of such impairment; or (iii) Being regarded as having such an impairment as described in paragraph (f) of this section." 28 C.F.R. § 35.108(a)(1).

47. The definition of disability "shall be construed broadly in favor of expansive coverage." 28 C.F.R. § 35.108(a)(2)(i).

48. Implementing regulations require public entities to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the service, program, or activity." 28 C.F.R. § 35.130(b)(7).

49. Russell is a qualified individual with a disability because the diagnosed lateral epicondylitis in her left arm substantially limits her ability to reach and lift. *See* 28 C.F.R. § 35.108(c)(1)(i) (listing "reaching" and "lifting" as examples of "major life activities").

50. RVCC, a public entity, excluded Russell from participating in its nursing program because of her disability.

51. RVCC also failed to honor Russell's documented reasonable accommodation requests.

## COUNT II
**Breach of Contract (Student Handbook)**

52. Russell re-alleges and incorporates by reference all paragraphs as if fully restated herein.

53. The relationship between a university and its student is contractual in nature. *Marlowe v. Keene State Coll.*, 189 F. Supp. 3d 326, 332 (D. Mass. 2016) (applying New Hampshire law); *see also, e.g.*, *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 415 (D.R.I. 2018) ("[A] student's relationship to his university is based in contract.") (internal citations omitted).

8

54. Russell paid RVCC sums of money for her education, and in return, RVCC contracted to provide Russell access to its LPN program.

55. "The terms of this contract [are] the terms contained in the Student Handbook and other college materials." *Bleiler v. Coll. of Holy Cross*, No. 11-11541-DJC, 2013 WL 4714340, at *14 (D. Mass. Aug. 26, 2013).

56. RVCC's Student Handbook states that "the College is committed to providing a variety of educational approaches, instructional methods, supplementary services, and co-curricular activities to meet [its students'] diverse needs." Ex. A, at 1.

57. The Non-Discrimination Policy in the Handbook states that it "does not discriminate in the administration of its admissions and educational programs, [or] activities, . . . on the basis of . . . disability." Ex. A, at 2.

58. RVCC's Handbook also states that it provides reasonable accommodations to students with disabilities to "allow them to achieve at a level limited only by their abilities and not their disabilities." Ex. A, at 28.

59. RVCC did not accommodate Russell's instructional needs due to her disability, as it contracts to do in the Handbook.

60. RVCC did not even offer to discuss possible, reasonable accommodations with Russell after being presented with her doctor's recommendations.

61. Instead, RVCC removed Russell from the nursing program without any attempt to provide an accommodation.

62. RVCC breached its contract with Russell by violating its own Student Handbook and discriminating against Russell on the basis of her disability by removing her from the program and failing to reasonably accommodate her disability.

## COUNT III
### Breach of Contract (Tuition for Class Credit)

63. Russell re-alleges and incorporates by reference all paragraphs as if fully restated herein.

64. The relationship between a university and its student is contractual in nature. *Marlowe*, 189 F. Supp. 3d at 332 (applying New Hampshire law).

65. Russell paid RVCC sums of money for her education, and in return, RVCC contracted to provide Russell access to its LPN program.

66. Despite paying RVCC a sum of money, Russell was removed from access to RVCC's LPN program.

67. Russell did not receive a refund of tuition.

68. Further, instead of receiving an Incomplete for the classes in which she was enrolled, RVCC gave Russell failing grades for the assignments she missed after being removed from the program, resulting in a D and an F.

69. RVCC breached its contract with Russell to provide her access to the LPN program in exchange for her tuition payments.

WHEREFORE, Russell respectfully requests that this Court enter judgment against Defendant RVCC on all counts of this complaint. Russell further requests that this Court:

A. Order RVCC to pay damages for its violations of the ADA and for its breaches of contract;

B. Issue a preliminary injunction enjoining RVCC from assigning grades to Russell for the courses she was removed from (see accompanying motion) or alternatively to assign her grades of Incomplete;

C. Order RVCC to remove record of Russell's attendance in the Licensed Practical Nursing Program;

D. Award Russell the reasonable costs of this action, including attorneys' fees; and

E. Grant such other and further relief as this Court deems equitable and just.

Dated: June 3, 2022

Respectfully submitted,

/s/ *Olivia F. Bensinger*
Olivia F. Bensinger (NH Bar #274145)
SHAHEEN & GORDON, P.A.
107 Storrs Street, P.O. Box 2703
Concord, NH 03302
(603) 225-7262
obensinger@shaheengordon.com

*Attorney for plaintiff Danielle Russell*